## UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

---

No. 23-2419

---

NEW JERSEY STAFFING ALLIANCE et al.,
*Plaintiffs-Appellants*,

v.

CARI FAIS et al.,
*Defendants-Appellees*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF NEW JERSEY (No. 23-cv-2494 (CPO))

---

### Opposition to Motion for Injunction Pending Appeal

---

MATTHEW J. PLATKIN
*Attorney General of New Jersey*

JEREMY M. FEIGENBAUM
*Solicitor General*

ANGELA CAI
*Deputy Solicitor General*

JESSICA L. PALMER
EVE WEISSMAN
MARY KENAH
NATHANIEL I. LEVY
ASHLEIGH B. SHELTON
*Deputy Attorneys General*

Office of the New Jersey Attorney General
R.J. Hughes Justice Complex
25 Market Street, P.O. Box 080
Trenton, NJ 08625-0080
(862) 350-5800
Nathaniel.Levy@njoag.gov

*Attorneys for Defendants-Appellees*

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ............................................................................ i

TABLE OF AUTHORITIES ...................................................................... ii

INTRODUCTION ................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND ...............................4

    A.   The Temporary Worker Bill of Rights. ....................................4

    B.   The Instant Litigation. ...............................................................7

ARGUMENT .........................................................................................8

   I.    APPELLANTS LACK ANY RIGHT TO RELIEF ON THE MERITS.......9

    A.   The TWBR Does Not Violate The Dormant Commerce Clause. ..............9

    B.   The TWBR Is Not Void For Vagueness. ................................12

   II.   THE EQUITIES LIKEWISE SUPPORT DENYING RELIEF..................20

CONCLUSION .....................................................................................22

CERTIFICATE OF COMPLIANCE....................................................24

CERTIFICATION OF BAR MEMBERSHIP.......................................25

CERTIFICATE OF SERVICE .............................................................26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott v. Perez*,
  138 S. Ct. 2305 (2018) ........................................................................21

*Acierno v. New Castle Cty.*,
  40 F.3d 645 (3d Cir. 1994) ...................................................................8

*Amalgamated Transit Union Local 85 v. Port. Auth. of Allegheny Cnty*,
  39 F.4th 95 (3d Cir. 2022) ...................................................................9

*Baldwin v. G. A. F. Seelig, Inc.*,
  294 U.S. 511 (1935) ............................................................................10

*Brobst v. Columbus Servs. Int'l*,
  761 F.2d 148 (3d Cir. 1985) ...............................................................17

*Brown-Forman Distillers Corp. v. New York State Liquor Authority*,
  476 U.S. 573 (1986) ............................................................................10

*Cameron v. EMW Women's Surgical Ctr., P.S.C.*,
  142 S. Ct. 1002 (2022) ........................................................................21

*Caplan v. Fellheimer Eichen Braverman & Kaskey*,
  68 F.3d 828 (3d Cir. 1995) .................................................................21

*CMR D.N. Corp. v. City of Phila.*,
  703 F.3d 612 (3d Cir. 2013) ......................................................... 13, 14

*Coates v. City of Cincinnati*,
  402 U.S. 611 (1971) ............................................................................13

*E.E.O.C. v. McCarthy*,
  768 F.2d 1 (1st Cir. 1985) ...................................................................16

*FTC v. Wyndham Worldwide Corp.*,
  799 F.3d 236 (3d Cir. 2015) ............................................... 3, 13, 14, 17

*Grayned v. City of Rockford*,
    408 U.S. 104 (1972) .......................................................................13

*Healy v. Beer Institute*,
    491 U.S. 324 (1989) .......................................................................10

*Holland v. Rosen*,
    895 F.3d 272 (3d Cir. 2018) .........................................................20

*Hope v. Warden York Cty. Prison*,
    972 F.3d 310 (3d Cir. 2020) ........................................................2, 9

*Lanin v. Borough of Tenafly*,
    515 F. App'x 114 (3d Cir. 2013) ..................................................20

*Messina v. Coll. of N.J.*,
    566 F. Supp. 3d 236 (D.N.J. 2021) ..............................................21

*Moreno v. Att'y Gen.*,
    887 F.3d 160 (3d Cir. 2018) .........................................................14

*National Pork Producers Council v. Ross*,
    598 U.S. 346 (2023) ................................................................ passim

*Nken v. Holder*,
    556 U.S. 418 (2009) .......................................................................21

*Pike v. Bruce Church, Inc.*,
    397 U.S. 137 (1970) .......................................................................12

*Punnett v. Carter*,
    621 F.2d 578 (3d Cir. 1980) ...........................................................8

*San Filippo v. Bongiovanni*,
    961 F.2d 1125 (3d Cir. 1992) .......................................................14

*Steele v. Pelmor Labs. Inc.*,
    642 F. App'x 129 (3d Cir. 2016) ..................................................17

*Sypniewski v. Warren Hills Reg'l Bd. of Educ.*,
  307 F.3d 243 (3d Cir. 2002) ................................................................14

*Trojan Techs., Inc. v. Com. of Pa.*,
  916 F.2d 903 (3d Cir. 1990) ...............................................................20

*U.S. Sec. & Exch. Comm'n v. Hui Feng*,
  935 F.3d 721 (9th Cir. 2019) ..............................................................16

*United States v. Williams*,
  553 U.S. 285 (2008) .................................................................... 13, 16

**Statutes**

29 U.S.C. § 206 ....................................................................................16

N.J. Admin. Code §§ 12:66-2.1, -2.4 .................................................18

N.J. Admin. Code § 12:72-7.2 ...................................................... 19, 20

N.J. Stat. Ann. § 10:5-12 .............................................................. 16, 17

N.J. Stat. Ann. § 34:11-56.61 .............................................................18

N.J. Stat. Ann. § 34:8D-1 ............................................................ 4, 5, 21

N.J. Stat. Ann. § 34:8D-11 ...................................................................6

N.J. Stat. Ann. § 34:8D-2 .....................................................................5

N.J. Stat. Ann. § 34:8D-4 .....................................................................6

N.J. Stat. Ann. § 34:8D-5 .....................................................................6

N.J. Stat. Ann. § 34:8D-6 .....................................................................6

N.J. Stat. Ann. § 34:8D-7 ...................................................... 3, 5, 12, 15

N.J. Stat. Ann. § 34:8D-8 .....................................................................6

P.L. 2023 ch. 10 ...............................................................................5

**Regulations**

29 C.F.R. § 1620.13 ........................................................................16

55 N.J.R. 1804............................................................... 7, 19, 20

**Other Authorities**

Brenda Flanagan, *NJ's temp workers bill takes effect this week*, N.J. Spotlight
 News (Aug. 7, 2023), https://tinyurl.com/3wu3jtcb ...........................................22

Conditional Veto Stmt., A1474 (First Reprint) (Sept. 22, 2022)
 https://www.njleg.state.nj.us/bill-search/2022/A1474 ..........................................5

N.J. Division on Civil Rights, Guidance on the Diane B. Allen Equal Pay Act
 (Mar. 2020),  https://tinyurl.com/ye27t8w8........................................................17

**INTRODUCTION**

Recognizing that temporary laborers can be particularly vulnerable to abusive labor practices, the New Jersey Legislature enacted the Temporary Workers Bill of Rights (TWBR) to protect them. The law achieves its goal of reducing labor abuses by, *inter alia*, requiring disclosure of basic job information, ensuring transportation safety, preventing wage diversion, prohibiting retaliation, mandating recordkeeping, and requiring fair wages. Although Appellants—trade associations representing temporary staffing agencies (temp agencies) and their third-party employer clients— brought a potpourri of constitutional challenges to this law, the district court rightly denied a preliminary injunction. And while Appellants repeat their same arguments in their motion for an injunction pending appeal, this Court should reject them too.

As an initial matter, Appellants' demand is extraordinary: they are seeking an emergency injunction pending appeal that would invalidate the TWBR's protections *after* they have already gone into effect and *after* workers have already begun relying on them. That is, although Appellants admit that stays pending appeal are typically appropriate when "needed to preserve the *status quo*," Mot.13, Appellants now seek to undo it. The TWBR was signed into law by the Governor in February and became fully effective on August 5, 2023. Inexplicably, Appellants waited three months after the legislation became law to file suit, and nearly four weeks after the law's challenged provisions took effect to file this motion. That delay in seeking

1

emergency relief is fatal both because it squarely contradicts Appellants' alleged urgency, and because their motion would interfere with important protections on which temporary workers have already begun relying. That is why requesting a mandatory injunction to undo the status quo must meet an even higher standard: an "indisputably clear" right to relief. *Hope v. Warden York Cty. Prison*, 972 F.3d 310, 320 (3d Cir. 2020).

As the district court correctly pointed out, however, Appellants cannot even satisfy the lower burden of a likelihood of success on the merits. Appellants' first argument—that the TWBR is inconsistent with the Dormant Commerce Clause—is a nonstarter, especially after *National Pork Producers Council v. Ross*, 598 U.S. 346 (2023) (*NPPC*). Appellants' primary complaint is that the law governs New Jersey-based temporary workers who may be placed at out-of-state locations. But *NPPC* is clear that mere extraterritorial effects on interstate commerce alone are insufficient to show a violation of the Dormant Commerce Clause. And the TWBR bears none of the hallmarks of economic protectionism that are the doctrine's heartland. Nowhere do Appellants explain how the TWBR—which applies both to in-state and out-of-state businesses that employ New Jersey temporary workers—discriminates against out-of-state commerce, or build a record of burdens to interstate commerce. That omission is fatal.

Appellants' second theory—that the TWBR's fair-pay provision is "void for vagueness" under the Due Process Clause—also lacks merit. As a civil economic measure, the TWBR's requirement to pay temporary workers equally is only invalid if its provisions are so unclear as to amount to "no rule or standard at all"—a stringent test that Appellants make no effort to satisfy. *FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015). And the TWBR's language easily clears that bar: it requires temporary workers be paid no "less than the average rate of pay and average cost of benefits, or the cash equivalent thereof, of employees of the third party client performing the same or substantially similar work." N.J. Stat. Ann. § 34:8D-7(b). This specific, discrete, and comprehensible mandate relies on language found in other federal and New Jersey labor and employment-discrimination laws, and is no more difficult to interpret than other laws this Court has upheld against vagueness challenges. Indeed, as the district court recognized, Appellants— sophisticated economic actors—have the expertise to comply, especially given the proposed regulations (offering even more detailed guidance) from the very agency charged with enforcing the statute.

Appellants no doubt disagree strongly with the TWBR. But that is the purview of policy dispute. Appellants remain free to take their complaints to the Legislature, and to submit comments during the ongoing rulemaking process. But Appellants

have not met the extraordinarily high bar to justify invalidating the statute on constitutional grounds, let alone on this emergency posture.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    The Temporary Worker Bill of Rights.

In enacting the TWBR, the New Jersey Legislature endeavored to provide important protections to a subset of workers who "are particularly vulnerable to abuse": temporary laborers. N.J. Stat. Ann. § 34:8D-1(c), (d). Those abuses include "unpaid wages, failure to pay for all hours worked, minimum wage and overtime violations, unsafe working conditions, unlawful deductions from pay for meals, transportation, equipment, and other items, as well as discriminatory practices." N.J. Stat. Ann. § 34:8D-1(c). As a result, the Legislature enacted the TWBR and tasked the New Jersey Department of Labor and Workforce Development (NJDOL) and the Division of Consumer Affairs (DCA) with its implementation.

The bill focuses on the temporary workers most vulnerable to these abusive practices. While a prior version of the TWBR would have applied to all temporary laborers, Governor Phil Murphy conditionally vetoed that bill in September 2022, recommending that the Legislature tailor the bill to "those positions in the workforce at greatest risk of exploitation" so as to "ease the compliance burdens placed on the temporary help service industry, while ensuring that laborers in certain occupations subject to more extreme hardships receive due protection and consideration in

enforcement." Conditional Veto Stmt., A1474 (First Reprint), at 3 (Sept. 22, 2022); *see generally* https://www.njleg.state.nj.us/bill-search/2022/A1474 (bill history). The Legislature concurred, and the resulting bill became law on February 6, 2023. *See* P.L. 2023 ch. 10 (codified as N.J. Stat. Ann. § 34:8D-1 to -13). The TWBR thus applies only to temporary workers in particular sectors ("designated classification placements"). *See* N.J. Stat. Ann. § 34:8D-2 (listing sectors).

To protect those workers, the Legislature enacted specific statutory rights and protections for them. As relevant here, the Legislature enacted fair-pay provisions. Finding that temporary laborers earn substantially less than their similarly situated counterparts in other employment arrangements, N.J. Stat. Ann. § 34:8D-1(b), the Legislature required that a covered laborer "shall not be paid less than the average rate of pay and average cost of benefits, or the cash equivalent thereof, of employees of the third party client performing the same or substantially similar work," N.J. Stat. Ann. § 34:8D-7(b). Additionally, agencies may not "restrict the right of a [covered laborer] ... to accept a permanent position" nor "restrict the right of a third party client to offer employment to a temporary laborer." N.J. Stat. Ann. § 34:8D-7(a).

The law enshrines other protections, too. Having found temporary laborers are often subject to unsafe conditions and unlawful deductions for their transportation expenses, N.J. Stat. Ann. § 34:8D-1(c), the Legislature prohibited temp agencies and their clients from charging covered laborers for transportation to or from a worksite,

and instituted a variety of transit-related measures to promote temporary laborers' safety. N.J. Stat. Ann. § 34:8D-5. Separately, the Legislature also enhanced temp agencies' recordkeeping obligations, including those associated with any wage deductions and the costs of equipment and meals charged to a covered laborer, *see* N.J. Stat. Ann. § 34:8D-4, and required agencies to provide workers with "a detailed itemized statement on the temporary laborer's paycheck stub," including their hours worked, rate of pay, and all deductions, N.J. Stat. Ann. § 34:8D-6(a). The TWBR added certification requirements for temp agencies. N.J. Stat. Ann. § 34:8D-8(a), (g), (h). And it contains redress provisions: the law permits aggrieved persons, and temp agencies aggrieved by violations committed by any third-party clients, to bring actions in New Jersey Superior Court. N.J. Stat. Ann. § 34:8D-11(a).

The statutes' substantive protections have since taken effect. Sections of the law not at issue in this lawsuit—mandating certain forms of disclosure to temporary laborers and prohibiting retaliation for the exercise of statutory rights—took effect on May 7. The remainder of the law, including the provisions challenged here, took effect on August 5. Moreover, NJDOL has already initiated the rulemaking process to provide even more guidance to workers and industry alike regarding the scope of the law: on July 21, NJDOL posted on its website a Notice of Proposed Rulemaking to implement the TWBR. *See* ECF 32. The Notice provides stakeholders with greater clarity about NJDOL's proposed interpretation of the TWBR's requirements as well

as an opportunity to prepare comments for the agency's consideration. *See* 55 N.J.R. 1804(a) (formal publication August 21, initiating 60-day comment period).

B.    <u>The Instant Litigation</u>.

On May 5, 2023, the New Jersey Staffing Alliance, New Jersey Business and Industry Association, and American Staffing Association—three organizations that represent various staffing firms and businesses—brought a facial challenge to the TWBR and sought preliminary injunctive relief. Appellants brought claims under the Dormant Commerce Clause, Equal Protection Clause, Privileges and Immunities Clause, and Due Process Clause (asserting both void-for-vagueness and violation of police powers theories). *See* ECF 1; 1-2. The district court ordered briefing—during which Appellants provided supplemental affidavits—and oral argument.

On July 26, the district court denied the motion for a preliminary injunction, deciding that none of Appellants' claims were likely to succeed on the merits. ECF 34 ("Op."). The Court decisively rejected Appellants' numerous policy objections to the TWBR, noting that "[i]t is not for this Court to determine whether the policies served by the Act are worthy of pursuit, or whether it is wise to impose the likely burdens to follow upon New Jersey businesses like Plaintiffs' members ... These were questions for the Legislature and are now for regulators." Op.25 (emphasis removed).

7

On August 11, sixteen days after the district court's denial of emergency relief and six days after the TWBR wholly took effect, Appellants moved in the district court for an injunction pending appeal as to the fair-pay provision. ECF 39-1. The district court denied the motion the next business day, August 14, noting that "not only did [Section 7] already go into effect ... six days prior ... but Plaintiffs reiterate the same arguments the Court [already] considered" and rejected. ECF 40 at 2.

Almost three weeks later, on September 1, Appellants' motion followed.

## ARGUMENT

This Court should deny Appellants' motion seeking an emergency injunction pending appeal[1]—filed nearly four weeks after the TWBR took full effect. Because Appellants motion seeks "a mandatory preliminary injunction that will alter the status quo," they "bear[] a particularly heavy burden in demonstrating its necessity." *Acierno v. New Castle Cty.*, 40 F.3d 645 (3d Cir. 1994); *see Punnett v. Carter*, 621 F.2d 578 (3d Cir. 1980) ("[W]hen the preliminary injunction is directed not merely at preserving the status quo but, as in this case, at providing mandatory relief, the burden on the moving party is particularly heavy."). Appellants must establish "a substantial likelihood of success on the merits" and an "indisputably clear" right to

---

[1] While Appellants state that they are "most concerned" about the fair-pay provision, Mot. 3, they apparently seek an injunction of the TWBR in its entirety, *see id.* at 2, 20, including parts of the statute that took effect in May, *see* Op.6. But their motion does not address any provision other than the fair-pay section.

8

relief. *Hope*, 972 F.3d at 320. And Appellants must also show that the equitable factors—irreparable harm, the balance of the equities, and the public interest—favor them. *See Amalgamated Transit Union Local 85 v. Port. Auth. of Allegheny Cnty*, 39 F.4th 95, 103 (3d Cir. 2022). But as the district court correctly concluded, Appellants come up short: both the Dormant Commerce Clause and vagueness claims lack merit, and the equities likewise compel denying their motion— especially since it would disrupt the status quo.

## I.    APPELLANTS LACK ANY RIGHT TO RELIEF ON THE MERITS.

Appellants' Dormant Commerce Clause and vagueness claims are unlikely to succeed on appeal, let alone in an "indisputably clear" fashion.[2]

### A.    The TWBR Does Not Violate The Dormant Commerce Clause.

This Court can make short work of Appellants' Dormant Commerce Clause claim—especially on this emergency posture—because it is flatly inconsistent with the Supreme Court's recent decision in *National Pork Producers Council v. Ross*. In *NPPC*, the Court confirmed that rooting out "antidiscrimination"—that is, state laws "seek[ing] to advantage in-state firms or disadvantage out-of-state rivals"—lies "at the core" of the Dormant Commerce Clause. 598 U.S. at 370-71. But at the district court correctly pointed out, the TWBR "does not discriminate" between in-state and out-of-state commerce. Op.18 n.13. Appellants' claim is thus a nonstarter.

---

[2] Appellants do not press their other claims at this juncture.

9

The exact contours of Appellants' theory are not entirely clear. It appears that Appellants continue to press a straightforward "extraterritorial effects theory"—*i.e.*, that the law is unconstitutional because it imposes compliance burdens on out-of-state clients that transact with covered New Jersey temp agencies. *See* Mot.15 (basing claim on fact that out-of-state clients are "subject to ... the [TWBR]"). But that theory fails because *NPPC* expressly rejected it. *See* 598 U.S. at 376 (rejecting notion that "the ability of a State to project its power extraterritorially must yield" to Dormant Commerce Clause); *see also* Op.18 n.13 (same).

Appellants' effort to evade *NPPC* by characterizing the TWBR as an impermissible price-fixing statute is also unavailing. The cases Appellants cite— *Healy v. Beer Institute*, 491 U.S. 324 (1989), *Brown-Forman Distillers Corp. v. New York State Liquor Authority*, 476 U.S. 573 (1986), and *Baldwin v. G. A. F. Seelig, Inc.*, 294 U.S. 511 (1935)—each reflects that the Commerce Clause's concern is with precisely the sort of economic protectionism and burdens on *interstate* commerce that are missing here. *See NPPC*, 598 U.S. at 371 (noting these precedents "typif[y] the familiar concern with preventing purposeful discrimination against out-of-state economic interests"). Indeed, those decisions all dealt with state laws that "operated like 'a tariff or customs duty'" on out-of-state products (*Baldwin*) or barred out-of-state businesses from undercutting their in-state counterparts' prices

or "enjoy[ing]" "cost advantages ... against their in-state rivals" (*Healy* and *Brown-Forman*). *Id.* at 372 (citation omitted).

The TWBR looks "nothing like those" "brazenly protectionist" laws. Op.19. The law evenhandedly burdens *both* in-state and out-of-state clients of covered New Jersey temp agencies and does not substantially burden the interstate market for temporary laborers. By way of illustration, a "Pennsylvania staffing agency seeking to place temporary workers at a Philadelphia business, for example, needs only to abide by Pennsylvania law, whereas a New Jersey agency seeking to do the same must abide by the [TWBR], meaning the Pennsylvania agency can likely offer lower labor costs and fewer regulatory requirements than their New Jersey competitor." Op.20. Said another way, "[t]here is simply nothing discriminatory" or "protectionist" "about the [TWBR]": it does not seek to privilege any New Jersey workers or companies over their out-of-state competitors, or burden those out-of-state workers or companies either. *Id.* Nor does the law force out-of-state players to surrender whatever cost advantages they might enjoy when availing themselves of the New Jersey market. If a Pennsylvania client hires a New Jersey temporary laborer through a New Jersey temp agency and is thus subject to the TWBR, it can still leverage any cost advantages relative to its New Jersey competitors. Compliance burdens that fall equally on New Jersey businesses do not constitute protectionism.

And while Appellants complain that the Dormant Commerce Clause cannot be limited exclusively to cases of protectionism, they do not appear to advance any argument under *Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970), or to explain how they meet *Pike*'s high standard. As two concurring Justices explained in *NPPC*, there may still be room to argue that a facially nondiscriminatory state law is invalid because it imposes a "substantial burden on interstate commerce" that greatly outweighs the State's interests. *NPPC*, 598 U.S. at 391 (Sotomayor, J., concurring). But that scenario requires the challenger to build a record establishing that the law imposes a "substantial burden on interstate commerce" that far exceeds the benefits of the law. *See id.* (agreeing purpose of such analysis is to "detect the presence or absence of latent economic protectionism," and noting that challengers bear the evidentiary burden); *id.* at 378 (majority op.) (noting *Pike* aims at "smoking out a hidden protectionism" (cleaned up)). Appellants did not do so here, and even if they had, a *Pike*-based claim would fail for all the reasons identified by the district court. *See* Op.20-21.

B.    The TWBR Is Not Void For Vagueness.

Section 7(b)'s fair-pay standard, which states that a covered laborer "shall not be paid less than the average rate of pay and average cost of benefits, or the cash equivalent thereof, of employees of the third party client performing the same or substantially similar work," N.J. Stat. Ann. § 34:8D-7(b), is not void for vagueness.

12

The TWBR's plain text provides more-than-sufficient notice to all regulated entities, and NJDOL's proposed regulations only provide further guidance.

As the district court correctly acknowledged, Appellants bear an extraordinary burden to obtain relief against a civil economic statute on vagueness grounds. A law is vague under the Due Process Clause only if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *United States v. Williams*, 553 U.S. 285 (2008). Appellants acknowledge this, but fail to address the fact that the already-limited vagueness doctrine is "especially lax" for economic legislation. *Wyndham Worldwide*, 799 F.3d at 250. To be held unconstitutionally vague, such a law must be "so vague as to be no rule or standard at all." *Id.*; *see Coates v. City of Cincinnati*, 402 U.S. 611 (1971) (to survive vagueness challenge, economic legislation need only be "comprehensible"). This means mere questions of statutory interpretation, arising from "ambiguities" on the margins, are never enough to justify invalidating a statute. *CMR D.N. Corp. v. City of Phila.*, 703 F.3d 612, 631 (3d Cir. 2013). Were it otherwise, a mere "dispute[]" about textual "meaning" would render many statutes unconstitutionally vague. *Grayned v. City of Rockford*, 408 U.S. 104 (1972). That has never been enough.

This Court has repeatedly rejected vagueness challenges to civil laws that—while open to statutory interpretation at the margins—were not "so vague as to be

no rule or standard at all." For example, in *Wyndham Worldwide*, this Court upheld a federal law that generally prohibited "unfair or deceptive acts or practices." 799 F.3d at 240; *see id.* at 255-56. As this Court explained, that prohibition was "far from precise," and would surely generate "borderline cases where it is unclear if a particular company's conduct falls below the requisite legal threshold." *Id.* at 255-56. But it was nevertheless lawful, because its "standard informs parties" of the "relevant factors" to be taken into account. *Id.* at 255; *see also id.* at 256 ("[U]nder a due process analysis a company is not entitled to such precision as would eliminate all close calls"). Nor is this example unusual. *See, e.g.*, *CMR*, 703 F.3d at 631-32 (upholding local zoning ordinance that required all "development [be] appropriate in scale, density, character and use," and citing cases upholding similarly ambiguous zoning ordinances); *Moreno v. Att'y Gen.*, 887 F.3d 160, 166 (3d Cir. 2018) (upholding law imposing consequences for any "crime involving moral turpitude"); *Sypniewski v. Warren Hills Reg'l Bd. of Educ.*, 307 F.3d 243 (3d Cir. 2002) (upholding school's prohibition on "racially divisive" material); *Moreno v. Att'y Gen.*, 887 F.3d 160 (3d Cir. 2018) (upholding law imposing consequences for any "crime involving moral turpitude"); *San Filippo v. Bongiovanni*, 961 F.2d 1125, (3d Cir. 1992) (tenured professors must maintain "sound scholarship and competent teaching").

Particularly given this lax standard, whether the TWBR's fair-pay provision is unlawfully vague is not a close question. *See* Op.23-24 (district court confirming Section 7(b) of the TWBR "is not facially vague"). The challenged text is simple: it requires that a temporary laborer in a designated classification placement performing "the same or substantially similar work" as permanent employees "under similar working conditions" be paid at least "the average rate of pay and average cost of benefits, or the cash equivalent" of their comparators. N.J. Stat. Ann. § 34:8D-7(b). And the TWBR further narrows the definition of comparators to those who perform substantially similar work "on jobs the performance of which requires equal skill, effort, and responsibility." *Id.* These terms are plainly comprehensible—particularly for Appellants, who are "sophisticated commercial actors" whose members "engage in th[e] sort of" analysis required under the statute "all the time." Op.23.

Appellants' responses fail to meet their burden, especially because the TWBR relies on terms long familiar to employment law. While Appellants spill considerable ink complaining that they do not know which workers or jobs are comparable, *see* Mot.18, comparator analysis is a common feature of employment and antidiscrimination law. Like the TWBR, the federal Equal Pay Act (EPA)—to take one example—prohibits discrimination in pay between those who perform "equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." 29

15

U.S.C. § 206(d)(1) (enacted 1963). State law also prohibits discrimination between those who perform "substantially similar work, when viewed as a composite of skill, effort and responsibility." N.J. Stat. Ann. § 10:5-12(t). Appellants have not cited a single case suggesting that these statutes are vague, *see E.E.O.C. v. McCarthy*, 768 F.2d 1, 3 (1st Cir. 1985) (rejecting vagueness challenge and describing federal EPA as "constitutionally clear"), itself a strong indication that the TWBR's fair-pay provision is not, either.

The experience with federal and state discrimination and equal pay provisions likewise resolves Appellants' alleged concern that the comparator analysis will turn on "infinite" and unknowable factors. Mot.16. After all, "[a] word is not vague when it has a 'settled legal meaning.'" *U.S. Sec. & Exch. Comm'n v. Hui Feng*, 935 F.3d 721, 734 n.8 (9th Cir. 2019) (quoting *United States v. Williams*, 553 U.S. 285, 306 (2008)). And an extensive body of case law, regulations, and guidance interpreting these laws shed light on how to conduct the comparator analysis required by the TWBR. *See, e.g.*, 29 C.F.R. § 1620.13(e) (noting that the comparator analysis is fact-sensitive, not limited to job descriptions); *id.* § 1620.11 (prohibiting discrimination in provision of "fringe benefits" and listing examples); *id.* §§ 1620.15 to 1620.18 (offering guidance for scope and meaning of "skill," "effort," "responsibility," and "similar working conditions," including date and time); *see Steele v. Pelmor Labs. Inc.*, 642 Fed. App'x 129, 136 (3d Cir. 2016) (addressing EPA standard); *Brobst v.*

16

*Columbus Servs. Int'l*, 761 F.2d 148, 156 (3d Cir. 1985) (same); N.J. Division on Civil Rights, Guidance on the Diane B. Allen Equal Pay Act (Mar. 2020), at 6-8, https://tinyurl.com/ye27t8w8 (indicating agency's interpretation of N.J. Stat. Ann. § 10:5-12(t) largely tracks interpretations of comparable language in federal law). So while the specific "application" of these protections "to temporary workers is novel," this kind of comparator analysis is one already "know[n]." Op.23-24.

Appellants' complaints about the word "benefits," *see* Mot.17, is illustrative. Appellants do not contend that the word itself is incomprehensible or lacks meaning, but complain about specific applications—that is, that they are unsure whether/how to account for government-subsidized health insurance, "[v]esting schedules, profit plans," and other variations in employer-provided benefits. Mot.17. But for one, this is precisely the sort of specific and discrete alleged ambiguity that can never support facial invalidation on vagueness grounds. *See, e.g.*, *Wyndham Worldwide*, 799 F.3d at 255. And in any event, here too Appellants ignore the other available interpretive tools to answer their questions. After all, "benefits" is not an unusual statutory term; their members must already comply with statutory mandates that require identifying employer-provided "benefits." *See* Op.23. Notably, N.J. Stat. Ann. § 10:5-12(t)—part of the Diane B. Allen Equal Pay Act, to which Appellants' members are already subject—bars discrimination in "compensation, including benefits." Other laws establish recordkeeping requirements related to the provision of "benefits." *See, e.g.*,

N.J. Stat. Ann. § 34:11-56.61 (Prevailing Wage Act); N.J. Admin. Code §§ 12:66-2.1, -2.4 (NJDOL regulations). A business subject to the TWBR could surely look to these laws, among others, for guidance on how to interpret "benefits" in the context of Section 7(b). That is a far cry from justifying facial invalidation.

Appellants' argument runs into three other problems. First, as the district court explained in detail, Appellants have an especially weak showing that these statutory terms are incomprehensible to them. Indeed, Appellants are a group of "sophisticated commercial actors" whose members "engage in th[e] sort of" analysis required under the statute "all the time." Op.23. And their own motion for an injunction pending appeal confirms as much: by "raising" several detail-oriented "questions" about how to comply with Section 7—and asking "whether certain factors" must "be considered" in specific situations or contexts—Appellants "tacitly admit[ed] that they know *exactly* the sort of" factors on which the analysis likely turns. *Id.* To pass constitutional muster, that is enough: the TWBR need not "explicitly" instruct a regulated entity how to apply its multifactor analysis, and increasing compliance burdens alone does not make the law impermissibly vague. Op.23-24.

Second, though the TWBR's statutory text is more-than-sufficiently clear on its face, NJDOL's proposed regulations provide additional guidance that only further weakens Appellants' claim. As noted, the Notice issued by NJDOL proposes step-

18

by-step instructions for how to calculate the cash equivalent of benefits, beginning with identifying "the annual cost to the employer," 55 N.J.R. 1804(a), § 12:72-7.2, and identifies twelve "principles," or factors, relevant to the comparator analysis, *id.*, § 12:72-7.3. This proposal provides public notice of the enforcing agency's approach to the statute—on which the regulated community will have ample opportunity to offer public comment, and which NJDOL will have to consider under state law. *See* Op.25 ("[N]ow is [Appellants'] chance to get the answers they need."). Moreover, pending final rulemaking, NJDOL committed that it will not "enforce Section 7 in a ... manner" contrary to the interpretation adopted in the Notice, and will take good-faith efforts to comply with Section 7 into account in any enforcement action. ECF 32. That eliminates any specter of concern about arbitrary enforcement.[3]

Finally, to the extent that Appellants quibble with whether third-party clients opting to contract with a covered temp agency will "voluntarily" share with the temp agency the information necessary to comply with the fair-pay provision, Mot.6, they raise policy objections rather than due process concerns. *See Trojan Techs., Inc. v.*

---

[3] Appellants simply misread the Notice—and the law itself—in claiming inconsistency between Sections 12:72-7.3(a)(7) and (a)(10). *See* Mot.18-19. Section 7(b) of the TWBR provides the "substantially similar work" analysis turns on the "jobs" involved, and the skill, effort, and responsibility required for "performance" of those jobs. In other words, the focus of the provision is on the job, not the person performing it. The Notice simply clarifies that distinction. Section 12:72-7.3(a)(10) explains that the "years of service (i.e., seniority) of a particular employee is not relevant" to the assessment of "experience ... required to perform a job," which is a factor under subsection (a)(7). There is no vagueness here.

*Com. of Pa.*, 916 F.2d 903, 915 (3d Cir. 1990) (demanding compliance burden does not amount to vagueness). That is especially true now: Appellants ignore that under the Notice, clients "shall provide to the temporary help service firm a listing of the hourly rate of pay and cost per hour of benefits for each employee of the third-party client who the third-party client determines would be a comparator employee." *See* 55 N.J.R. 1804(a), § 12:72-7.2(a). Here too, Appellants fail to justify their effort to invalidate this fair-pay provision on vagueness grounds.

## II.    THE EQUITIES LIKEWISE SUPPORT DENYING RELIEF.

Because Appellants have not demonstrated a substantial likelihood of success on the merits—a "prerequisite" for a preliminary injunction—the Court's inquiry can stop there. *Holland v. Rosen*, 895 F.3d 272, 286 (3d Cir. 2018) (noting that when the merits factor is not met, courts "do not delve deeply into" the other factors). But in any event, the remaining equitable factors also cut against an injunction.

Initially, there is no need for this Court to grant relief on an expedited posture with truncated briefing. Emergency injunctive relief proceeds "under the theory that there is an urgent need for speedy action to protect the plaintiffs' rights" or preserve the status quo before a new law takes effect. *Lanin v. Borough of Tenafly*, 515 F. App'x 114, 117-18 (3d Cir. 2013). But while Appellants repeatedly assert that there is urgency for this Court to act, *see* Mot.1-2, 9-11, 19-20, their litigation conduct is to the contrary. Even though their requests for an injunction pending appeal before

this Court and the district court merely "reiterate[d] the same arguments" as in their preliminary-injunction papers, ECF 40 at 2, Appellants took weeks before seeking that relief. And in that time, "the law already [went] into effect," *id.* at 2, which means that their "purported harm … is a consequence of their own delay," *Messina v. Coll. of N.J.*, 566 F. Supp. 3d 236, 249 (D.N.J. 2021). Since self-inflicted harm "does not qualify as irreparable," *Caplan v. Fellheimer Eichen Braverman & Kaskey*, 68 F.3d 828, 839 (3d Cir. 1995), that provides still further reason to reject Appellants' demands on this emergency posture.

The public's interest also cuts strongly in favor of maintaining the status quo and denying an emergency injunction while the appeal plays out. *See Nken v. Holder*, 556 U.S. 418, 435 (2009) (noting balance-of-harms and public-interest factors are merged for government defendants). As a general matter, a State's "inability to enforce its duly enacted plans clearly inflicts irreparable harm on the State." *Abbott v. Perez*, 138 S. Ct. 2305, 2324 n.17 (2018); *see also Cameron v. EMW Women's Surgical Ctr., P.S.C.*, 142 S. Ct. 1002, 1011 (2022). And here, an injunction in this case would be particularly troubling: it would undermine the powerful state interest in protecting workers' health and safety, including from economic exploitation. The TWBR was meant to address documented abuses in the temporary worker industry, including inequitable and depressed wages. *See* N.J. Stat. Ann. § 34:8D-1(c), (d).

Enjoining the law would cause harm to these workers by nullifying these important protections, and would have ramifications for them, their families, and the State.

And the harms of an emergency injunction would be especially acute now, as temporary workers have already begun relying on the TWBR's express protections. A sudden injunction would wreak havoc on their lives by suddenly pulling away the protections that workers are already expecting and enjoying, including protections against the receipt of lower wages for completing substantially similar work as their permanent colleagues. It would put temporary workers in a state of uncertainty after community members and advocates spent considerable time and effort doing outreach on the TWBR's protections—especially if that injunction is later vacated by a merits panel. *See, e.g.*, Brenda Flanagan, *NJ's temp workers bill takes effect this week*, N.J. Spotlight News (Aug. 7, 2023), https://tinyurl.com/3wu3jtcb (describing efforts "to inform temps of their rights under the new law"). The equities and public interest confirm this Court should preserve the status quo.

## CONCLUSION

This Court should deny the injunction pending appeal.

Respectfully submitted,

MATTHEW J. PLATKIN
Attorney General of New Jersey

By:    /s/Nathaniel Levy
Deputy Attorney General

22

Dated: September 11, 2023

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Fed. R. App. P. 27(d) and L.A.R. 31.1(c), I certify that:

1.      This brief complies with the type-volume limitations of Fed. R. App. P. 27(d)(2)(A) because the brief contains 5,192 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), and thus does not exceed the 5,200-word limit.

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because the brief has been prepared in a proportionally spaced typeface using the Microsoft Word word-processing system in Times New Roman that is at least 14 points.

3.      This brief complies with L.A.R. 31.1(c) in that prior to being electronically submitted, it was scanned by the following virus-detection software and found to be free from computer viruses:

Company: McAfee, Inc.

Product: McAfee Endpoint Security Platform Version 10.7.0.2687 and McAfee Threat Prevention Version 10.7.0.787.


Dated: September 11, 2023        /s/Nathaniel Levy
                                 Nathaniel Levy
                                 Deputy Attorney General
                                 Office of the New Jersey Attorney General

24

## <u>CERTIFICATION OF BAR MEMBERSHIP</u>

I certify that that I am a member in good standing of the bar of the United

States Court of Appeals for the Third Circuit.


Dated: September 11, 2023          /s/Nathaniel Levy
                                   Nathaniel Levy
                                   Deputy Attorney General
                                   Office of the New Jersey Attorney General

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 11, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Third Circuit using the appellate CM/ECF system. Counsel of record for all parties are registered CM/ECF users and will be served by the appellate CM/ECF system.


Dated: September 11, 2023          /s/Nathaniel Levy_____
                                   Nathaniel Levy
                                   Deputy Attorney General
                                   Office of the New Jersey Attorney General