**Docket No: 23-2419**
**UNITED STATES COURT OF APPEALS**
**FOR THE THIRD CIRCUIT**

| | |
|---|---|
| NEW JERSEY STAFFING ALLIANCE, AMERICAN STAFFING ASSOCIATION; NEW JERSEY BUSINESS & INDUSTRY ASSOCIATION,<br><br>               Plaintiffs/Appellants,<br>v.<br><br>CARI FAIS, Acting Director of the New Jersey Division of Consumer Affairs in the Department of Law and Public Safety; STATE OF NEW JERSEY; ROBERT ASARO-ANGELO, Commissioner of Labor and Workforce Development; NEW JERSEY DIVISION OF CONSUMER AFFAIRS IN THE DEPARTMENT OF LAW AND PUBLIC SAFETY; NEW JERSEY DEPARTMENT OF LABOR AND WORKFORCE DEVELOPMENT,<br><br>               Defendants/Appellees. | **PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR INJUNCTION AND STAY PENDING APPEAL** |

JAVERBAUM WURGAFT HICKS
KAHN WIKSTROM & SININS, P.C.
Steven B. Harz, Esq.
David L. Menzel, Esq.
Rubin M. Sinins, Esq.
*Attorneys for Plaintiffs/Appellants*

## **PRELIMINARY STATEMENT**

This Court should enjoin, pending appeal, the operation and enforcement of the Temporary Workers' Bill of Rights, N.J.S.A. 34:8D-1 *et seq.* ("the Act"), because it violates the Dormant Commerce Clause and the Due Process Clause of the United States Constitution. While Appellees attempt to hide behind the laudable public policy goal of protecting temporary laborers, they cannot ignore that the Act unlawfully imposes requirements on out-of-state companies, regulating the price to be paid for New Jersey laborers employed there, and requires out-of-state companies to provide pricing and other information. The Act invites price gridlock, unconstitutionally burdening interstate commerce. In addition to Appellants' other claims, it is also unconstitutionally vague, failing to provide any understandable standard for identifying comparator employees or calculating their pay and benefits, opening the Act to arbitrary enforcement.

The Act is the first of its kind in the nation to require an out-of-state company to comply with another State's labor laws for temporary laborers, as well as requiring businesses to perform comparator analysis between employees of *different* companies to ascertain the required minimum pay. Although Appellees assert the Act is non-protectionist, as incorrectly concluded by the District Court, New Jersey cannot establish laws required to be used in other States, and cannot prohibit out-of-state companies from negotiating labor prices between New Jersey and out-of-state

competitors. Were other States to enact their own versions of the Act enforceable in New Jersey, requiring their citizens to be paid more than New Jersey's, or guaranteeing a different payment of benefits, there would be a labor price war – pricing gridlock - involving labor between the States. The Dormant Commerce Clause bars States from such extraterritorial pricing.

Ensuring that a novel law be understood and implemented by an industry employing tens of thousands of New Jersey workers is paramount. The District Court recognized the substantial changes imposed and concluded that the Act would cause irreparable harm, which Appellees fail to acknowledge.

We ask this Court to grant an injunction pending appeal, to protect the temporary staffing industry from confusion and irreparable harm by virtue of the Act's unconstitutional vague provisions. Even sophisticated employers cannot understand the Act, and ensuing harm undermines protections for workers the Act was designed to ensure.

## **ARGUMENT**

While Appellees correctly state that the moving party must show irreparable harm, likelihood of success on the merits, balancing the equities and the public interest, they improperly attempt to raise the burden on Appellants by ignoring the District Court's finding irreparable harm. Moreover, the Act does violate the Dormant Commerce Clause and, as demonstrated in Appellants' Motion Brief and

herein, among our other claims, the Act is vague in critical areas which make a preliminary injunction necessary.

**1. The Act Violates the Dormant Commerce Clause.**

The District Court erred in its conclusion that Plaintiffs are unlikely to succeed on the merits of their Dormant Commerce Clause claim by improperly interpreting National Pork Producers Council v. Ross, __ U.S. __, 143 S.Ct. 1142 (2023). Appellees perpetuate this error by continuing to assert National Pork reaches a holding which it does not. The Act *is* a pricing discrimination statute, and other pricing discrimination decisions, which National Pork did not overrule, establish why the Act is likewise unconstitutional.

In Baldwin v. G.A.F. Seelig, Inc., 294 U.S. 511 (1935), New York prohibited in-state sales of milk purchased out-of-state, unless the price paid to the out-of-state producer was the same paid to New York producers. Vermont producers were offering milk for a substantial discount. The Court found "New York has no power to project its legislation into Vermont by regulating the price to be paid in that state for milk acquired there." Id. at 521. The Court prohibited New York from outlawing the milk's later sale in New York, unlawfully enacting customs barriers between states, beyond the power of the States. Id. at 522.

In Healy v. Beer Institute, Inc., 491 U.S. 324 (1989), Connecticut required out-of-state beer shippers to affirm their Connecticut sales prices were no higher

than the prices sold within neighboring states. The statute unconstitutionally required out-of-state sellers to consider Connecticut pricing, restricting their ability to offer pricing discounts. The Commerce Clause prohibits States from forcing out-of-state merchants "to seek regulatory approval in one State before undertaking a transaction in another." Id. at 337. The practical effect of such laws would lead to competing state laws and "price gridlock". Id. at 340. National regulation of pricing mechanisms is left to the Federal Government. Id.

In Brown-Forman v. New York State Liquor Authority, 476 U.S. 573 (1986), the Court struck down a New York law requiring liquor distillers from selling above the lowest price offered out-of-state. The statute improperly required out-of-state consumers to surrender competitive pricing advantages. Id. at 580. "Economic protectionism is not limited to attempts to convey advantages on local merchants; it may include attempts to give local consumers an advantage over consumers in other States." Id.

The reasoning behind these cases exists post-National Pork. Writing the Opinion of the Court, Justice Gorsuch stated in National Pork:

> And when it comes to *Baldwin, Brown-Forman and Healy* . . . Throughout the Court explained that the challenged statutes had a specific impermissible "extraterritorial effect"-they deliberately "prevent[ed out-of-state firms] from undertaking competitive pricing" or "deprive[d] businesses and consumers in other States of 'whatever

4

> competitive advantages they may possess.'" (citations omitted)
>
> In recognizing this much, we say nothing new. This Court has already described "[t]he rule that was applied in *Baldwin* and *Healy*" as addressing "price control or price affirmation statutes" that tied "the price of . . . in-state products to out-of-state prices."

__ U.S. __ at p. 11-12.

Thus, the District Court erred in concluding the "extraterritoriality doctrine" is a dead-letter under National Pork [ECF 34 at p. 17]. Pricing statutes such as the Act, directly regulating commerce in other States, remain invalid under the Dormant Commerce Clause. The language quoted above from National Pork confirms this.

The District Court reached an improper legal conclusion by not recognizing that pricing control statutes like the Act remain invalid. The Healy Court determined protectionist law favoring Connecticut distributors was unconstitutional. The District Court failed to find the Act similarly favors New Jersey temporary workers at the expense of out-of-state companies. It is no answer that the Act applies equally to New Jersey and foreign companies. What is significant is New Jersey seeks to regulate pricing for out-of-state companies for work performed there. Under the Act, out-of-State companies may not negotiate pricing between agencies in their State and those in New Jersey below minimum wages for New Jersey residing workers.

The District Court erred distinguishing the Act from the "protectionist" statutes invalidated in Baldwin and Brown-Forman [ECF 34 at p. 18-19]. In certain ways, the Act reaches more deeply out-of-state. The Act mandates out-of-state companies abide by its pricing terms. Whereas New York in Baldwin regulated *in-state pricing* on milk sales by prohibiting discounted sales out-of-state, so too the Act prohibits lower pricing out-of-state. The Act goes further, mandating prices on *out-of-state sales*.

While Appellees attempt to distinguish this line of cases cited, their Response Brief actually supports Appellants' assertion that the Act's intention is to control out-of-State pricing. Appellees freely admit that if a "Pennsylvania client hires a New Jersey temporary laborer through a New Jersey temp agency" that out-of-state client is subject to the Act (Appellees' Brief at 11). Appellees' statement "compliance burdens that fall equally on New Jersey businesses do not constitute protectionism" misses the point – New Jersey cannot force pricing onto an out-of-state company. (Id.)

The District Court also erred in concluding out-of-state companies are not somehow disadvantaged by the Act [ECF 34 at p. 20]. It is simply inaccurate, as asserted by the Declaration of David Hayes, plant manager of Rogers Foam Corporation located in Pennsylvania [ECF 19-3]. Out-of-state businesses are burdened as they are forced to surrender whatever availing cost advantages they

might enjoy in Pennsylvania of a laborer in Pennsylvania who merely resides in New Jersey. The Act disadvantages out-of-State companies by limiting their ability to negotiate best pricing between companies in those two States and find the best laborers. Out-of-state companies cannot, as Appellees claim, "leverage any cost advantages to its New Jersey competitors" because there can be no unregulated negotiations under the Act. New Jersey sets minimum pricing in the Act for those out-of-state companies by requiring pay equity and other rules.

Impacting such pricing determinations is the gravamen of a Dormant Commerce Clause violation. The Act imposes a tariff on the labor sent out-of-state by restricting pricing for that labor.

2. **The Act Violates the Due Process Clause as Void for Vagueness.**

The District Court erred in its legal conclusion that the Act's pay and benefits provisions, N.J.S.A. 34:8D-7(b), are not unconstitutionally vague. Inherent problems with these provisions stem from the required comparison between employees from different companies and calculations associated with their cost of pay and cost of benefits.

The Act requires workers be paid no less than "the average rate of pay and average cost of benefits, or the cash equivalent" paid to *comparator employees at third party clients*. Id. The District Court and Appellees' citations to other statutes as providing guidance [ECF 34 at p. 23; Appellees' Brief at p. 15-18] are inapposite:

7

those statutes concern intra-company comparisons while the Act requires inter-company comparisons.

    a. <u>The Act's comparator provisions are unconstitutionally vague.</u>

The foundation of the pay provisions is a determination of "employees of the third-party client performing the same or substantially similar work." <u>Id.</u> Covered laborers cannot be paid less than the average rate of pay and average cost of benefits, or the cash equivalent, of those employees. Yet the Act does not define "same or substantially similar work". This is the type of standardless language which creates no rule and authorizes seriously discriminatory enforcement.

The Appellees seek to be the sole arbiter of determining whether work is the "same or substantially similar," and leave Appellants in a never-ending guessing game, based upon the Notice of Proposed Rulemaking ("Notice") to implement the Act. The Notice, issued on July 21, 2023, lists a series of "principles" for comparing employees.[1] The Notice goes beyond the language of the Act, and lists a large number of subjective, and contradictory, factors or "principles" for making this determination. These "principles" listed at N.J.A.C. 12:72-7.3 are contradictory and are so subjective that persons "'of common intelligence must necessarily guess at its

---

[1] The Notice of Proposed Rulemaking can be found at:
NJAC_12_72_(temporary_laborers)_(notice of proposal)_FILED_7_21_23)

meaning and differ as to its application.'" Karins v. Atlantic City, 152 N.J. 532, 541 (1998) (quoting Connally v. General Constr. Co., 269 U.S. 385, 391 (1926)).

For example, similarity of work "should be viewed as a composite of skill, effort and responsibility performed under similar working conditions." N.J.A.C. at 12:72-7.3(a)(1). Yet job descriptions are not dispositive, and analyses must be done over entire work cycles and not snap shots. Id. at 12:72-7.3(a)(4), (6). Skill is measured by experience, ability, education and training. Id. at 12:72-7.3(a)(7). Yet seniority is irrelevant to the determination, except insofar as the number of years required to perform the job. Id. at 12:72-7.3(a)(10). Despite "skill" being a factor for the comparator determination, the use of a "merit system" for compensation is irrelevant. Id. at 12:72-7.3(a)(11).

One of the principles states that, "Occasional, trivial or minor differences in duties that only consume a minimal amount of the employee's time will not render the work dissimilar," (Id. as 12:72-7.3(a)(3)). In reality, occasional differences in duties may be extremely important for that person's work. Another principle defines working conditions as "physical surroundings and hazards" but does "not include job shifts." Id. at 12:72-7.3(a)(12). The shift a person works directly impacts their physical surroundings and hazards.

These contradictions and lack of standards undermine the District Court's findings that these proposed regulations provide "fairly comprehensive instructions

for the calculation of appropriate wages and benefits." [ECF 34 at p. 24]. Even sophisticated employers in the temporary staffing industry lack understanding of these vague, contradictory provisions. This is not a situation, as Appellees describe, where parties are disputing a word on the margins; Section 7(b) is a core element of the Act's entire reason for existing. Standardless, arbitrary enforcement, together with joint and several liability amongst third party clients and the temporary staffing agencies, makes the current situation untenable.

The District Court is thus incorrect in its conclusion the Act is not unconstitutionally vague [ECF 34 at p. 22-25]. That Appellees assert Appellants' members are sophisticated employers [Id. at p. 23], does not establish a meaningful standard protecting against arbitrary enforcement. The District Court's reference to other employment statutes requiring cross-employee comparisons [Id.], all involving intra-company comparisons or specified minimum wage laws, does not solve the vagueness problem. While the District Court correctly notes Plaintiffs' concerns about third party clients' unwillingness to provide pricing information, problems extend beyond burdensome compliance. [ECF 34 at p. 24]. Their lack of understanding, combined with an unwillingness to share proprietary information, results in the loss of business.

b. <u>The Act's benefit-equivalency provisions are unconstitutionally vague.</u>

The Act does not define "benefits", and as used in the context of the Act, is so broad as to what encompasses "benefits" that this lack of specificity makes it standardless.

The Act's preamble shows the Legislature was focused on employer-sponsored retirement and health benefits. See N.J.S.A. 34:8D-1(b). Thus, temporary help service firms and third-party clients could correctly assume that "benefits" means retirement and health benefits.

The definition of "benefits" provided in the Notice, however, shows how wrong those businesses would be. Appellees go far beyond what the Legislature intended. The Notice provides a definition of "Benefits" as "employee fringe benefits, *including but not limited to*, health insurance, life insurance, disability insurance, paid time off (including vacation, holidays, personal leave and sick leave in excess of what is required by law) training, and pension." N.J.A.C. 12:72-2.1 (emphasis added). This creates an open-ended list of potential benefits which qualify and are subject to subjective application. Some types of benefits, such as vacation time, are accrued over a specified period. Benefits including health insurance may have waiting periods prior to their effective date.

Neither the Act nor the Notice take into account situations where staffing agencies provide benefits for the employee. The formula to determine average rate

11

of wages and benefits creates a perverse outcome where an employee accepts benefits from the staffing firm and receives a cash payment on top of the cost of benefits. The Notice makes no distinction between employees who accept or reject benefits.

Similarly absent from the Act are standards for making determinations about the innumerable benefits plans and how these may be converted to "cash equivalent". The Notice attempts to provide a formula to calculate "cash equivalent" of benefits, id. at N.J.A.C. 12:72-7.2(d), but it is mathematically impossible to prepare a formula for determining the cost of "benefits" as now explained in the Notice. The Department, therefore, is given *carte blanche* to decide one calculation is correct and other incorrect on arbitrary grounds.

The District Court's Opinion fails to address this conundrum, other than to indicate Plaintiffs can make these determinations based upon their experience complying with other statutes and may ask questions during the comment period. [ECF 34 at p. 22-25]. Respectfully, that is incorrect and does not solve the Act's vagueness.

## **CONCLUSION**

The Act should presently be enjoined.

JAVERBAUM WURGAFT HICKS
KAHN WIKSTROM & SININS, P.C.

*/s/ Steven B. Harz*
STEVEN B. HARZ, ESQ.

*/s/ David L. Menzel*
DAVID L. MENZEL, ESQ.

*/s/ Rubin M. Sinins*
RUBIN M. SININS, ESQ.

Dated: September 18, 2023

## **CERTIFICATION OF SERVICE**

I hereby certify that I caused a copy of the attached motion to be served on September 18, 2023, by the Notice of Docketing Activity generated by the Third Circuit's electronic filing system, on the following Filing Users:

Nathaniel Levy, Esq.
Nathaniel.Levy@njoag.gov

Jessica L. Palmer, Esq.
Jessica.palmer@law.njoag.gov

Eve Weissman, Esq.
Eve.Weissman@law.njag.gov

Angela Cai, Deputy Solicitor General
angela.cai@njoag.gov

                                                  */s/ David L. Menzel*
                                                  DAVID L. MENZEL

DATED:  September 18, 2023

## **CERTIFICATION OF COMPLIANCE**

I hereby certify that this motion contains 2596 words, and therefore does not exceed the 2600-word limit set forth in Fed. R. App. P.27(d)(2)(C).

                              */s/ David L. Menzel*
                              DAVID L. MENZEL

DATED:  September 18, 2023